IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAYESH GODAMBE, individually and on behalf of all others similarly situated, | : <br> : CIVIL ACTION FILE NO. 25-cv-12897 <br> : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : **Judge Robert W. Gettleman** <br> : <br> WOMEN'S HEALTHFIRST, PLLC : <br> : <br> : <br> Defendant. : |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS</u>**

<u>Introduction</u>

Women's Healthfirst, PLLC ("Defendant") has filed a Motion to Dismiss and to Strike Class Allegations that seeks to short-circuit this action at the pleading stage by recasting Plaintiff's straightforward TCPA claim as an isolated mistake, minimizing the concrete harm caused by Defendant's conduct, and improperly asking the Court to resolve factual disputes and affirmative defenses on a motion to dismiss. When the well-pleaded allegations of the Complaint are accepted as true and all reasonable inferences are drawn in Plaintiff's favor, Defendant's motion fails.

This case concerns Defendant's use of prerecorded, automated voicemail messages to place non-emergency calls to a cellular telephone number that did not belong to its patient and for which no consent existed. Defendant made multiple calls, left detailed voicemails containing information about their services, and continued calling even after the first message failed to reach its intended recipient. The TCPA was enacted precisely to prevent this type of intrusive conduct,

which invades personal privacy, wastes recipients' time and resources, and shifts the cost and burden of unwanted calls onto consumers.

Defendant's arguments rely heavily on factual assumptions that are neither pleaded in the Complaint nor appropriate for resolution on a Rule 12 motion. Whether Defendant had consent, whether the calls qualify for any regulatory exemption, whether Defendant's conduct was willful or knowing, and whether class treatment is appropriate are all issues that require factual development.

For these reasons, and as set forth in detail below, Defendant's Motion should be denied in its entirety.

## Statement of Facts

Plaintiff Jayesh Godambe is a resident of this District and the subscriber of a personal cellular telephone number used exclusively for residential and household purposes (ECF No. 1 ¶¶ 5, 39). Plaintiff shares use of this cellular telephone number with his minor son, and the number is not associated with any business or commercial enterprise (ECF No. 1 ¶¶ 39–41). Plaintiff's cellular telephone number has been listed on the National Do Not Call Registry since at least March 2023 (ECF No. 1 ¶ 42).

Plaintiff and his minor son have never been patients or customers of Defendant Women's Healthfirst, PLLC, have never sought information regarding Defendant's healthcare services, and have never provided Defendant with their cellular telephone number (ECF No. 1 ¶¶ 43–45). At no time did Plaintiff or his minor son provide prior express consent—written, oral, or otherwise—for Defendant to place calls to their cellular telephone number using an artificial or prerecorded voice (ECF No. 1 ¶¶ 45–46).

Despite the absence of any relationship or consent, Defendant placed multiple prerecorded voicemail calls to Plaintiff's cellular telephone number in August 2023 (ECF No. 1 ¶¶ 47–48). Specifically, Defendant placed at least one call on August 28, 2023 and at least one additional call on August 30, 2023 (ECF No. 1 ¶¶ 47–48). Each of these calls was placed using an artificial or prerecorded voice, rather than a live human caller (ECF No. 1 ¶ 53).

When Plaintiff did not answer the calls, Defendant left prerecorded voicemail messages on Plaintiff's cellular telephone voicemail system (ECF No. 1 ¶¶ 49–52). The content of the messages was detailed and specific. The first message stated that an appointment was scheduled for an individual named "Angelica," provided the appointment date and time, and instructed the recipient to arrive early with insurance and payment information (ECF No. 1 ¶ 50). The second message referenced a missed appointment, emphasized the importance of the recipient's health, and requested that the appointment be rescheduled (ECF No. 1 ¶ 51).

The voicemail messages were not emergency communications. They were not placed in response to any inquiry by Plaintiff. They were not informational messages requested by Plaintiff. Instead, they were unsolicited prerecorded calls delivered to a protected cellular telephone number without consent (ECF No. 1 ¶¶ 54–56).

Plaintiff and his minor son were not the intended recipients of the messages, had no connection to the individual named in the voicemails, and had no ability to prevent the initial or subsequent calls from occurring (ECF No. 1 ¶¶ 49–52). Defendant nonetheless placed multiple calls using the same prerecorded system, demonstrating that the conduct was not limited to a single, momentary error (ECF No. 1 ¶¶ 47–48). Plaintiff brings this action individually and on behalf of a nationwide class of similarly situated individuals who received prerecorded calls from

Defendant despite having no relationship with them during the applicable statutory period (ECF No. 1 ¶¶ 60–70).

## Argument

### I. The Plaintiff Should be Permitted to Pursue his Claim for Injunctive Relief

Defendant first argues that Plaintiff lacks standing to pursue injunctive relief because the Complaint alleges only past harm. This argument mischaracterizes both the allegations and the nature of the relief sought as the Plaintiff alleges that Defendant employs prerecorded calling technology to place non-emergency calls to cellular telephone numbers without consent. Plaintiff further alleges that Defendant placed multiple calls to his number and left detailed voicemails. These allegations support a reasonable inference that Defendant's practices are ongoing and systematic, not isolated or accidental.

The risk of future harm is not speculative where, as here, Defendant has demonstrated a willingness to use automated calling systems without verifying consent or accuracy of the called number. Nothing in the Complaint suggests Defendant has changed its practices, implemented safeguards, or ceased the conduct at issue. To the contrary, Plaintiff alleges that Defendant routinely uses prerecorded messages, creating a continuing risk that Plaintiff and class members will be subjected to further unlawful calls.

"The Supreme Court has recognized that when the time frame for the alleged injury is by nature temporary, a named plaintiff can continue to pursue the interests of the class even after his own claim has been rendered moot. Otherwise, a defendant could evade prospective injunctive relief simply by inflicting harms that are too transitory to last the length of an entire lawsuit or, in this case, by ceasing the alleged violations with respect to plaintiffs who step forward." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017) (citation omitted).

Accordingly, the *Snyder* court rejected the argument that a plaintiff cannot pursue injunctive relief for a class once he stops receiving calls:

> If this were sufficient to defeat standing, Ocwen would be able to cease calls to any individual the instant he joined the case as a named plaintiff and thereby indefinitely avoid injunctive relief, while keeping the allegedly unlawful practices in effect. A defendant's choice to end the challenged behavior— where he remains free to resume the unlawful conduct at any time—is insufficient to render plaintiff's claim moot.

*Id.* at 901 (citation omitted). Thus, Plaintiff need not allege that he continues to receive calls and this Court should hold the same.

Indeed, Judge Tharp arrived at the same conclusion when addressing a substantively identical motion in a TCPA case:

> To determine whether Marshall can support the need for injunctive relief, in lieu of or in addition to monetary damages, will require a more complete factual record. *See Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016) (declining to dismiss plaintiff's demand for injunctive relief at the pleading stage in a TCPA because plaintiff needed opportunity to develop factual record). Grubhub may wish to raise this argument, in addition to the objections to the class allegations discussed above, in response to a future motion for class certification. For now, its motion to strike class allegations is denied.

*Marshall v. Grubhub Inc.,* 2021 U.S. Dist. LEXIS 184291, *23 (N.D. Ill. 2021). At the pleading stage, Plaintiff need not prove that he will receive another call tomorrow or next week. It is sufficient that the Complaint plausibly alleges a real and immediate threat of future harm arising from Defendant's ongoing conduct. Defendant's attempt to reframe this as a purely historical dispute improperly raises factual issues that cannot be resolved on a motion to dismiss.

### II. Plaintiff Sufficiently Alleges Defendant's TCPA Violations were Willful or Knowing

Defendant next seeks dismissal of Plaintiff's claim for treble damages, arguing that the Complaint does not adequately plead willful or knowing conduct. This argument ignores the reasonable inferences that flow from Defendant's own alleged actions.

In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute.").

Plaintiff alleges that Defendant placed multiple prerecorded calls to a cellular telephone number that did not belong to its patient. Defendant left detailed messages referencing a missed appointment, demonstrating that it knew the first call did not accomplish its purpose yet chose to call again using the same automated system. Defendant did so without verifying consent, without confirming the accuracy of the number, and without employing any mechanism to prevent repeat calls to the wrong recipient.

From these allegations, it is reasonable to infer that Defendant acted at least knowingly with respect to the facts constituting the violation. Defendant's conduct was not inadvertent or momentary; it involved repeated use of prerecorded messages directed at a protected number. Whether Defendant's conduct ultimately warrants treble damages is a fact-intensive inquiry that

cannot be resolved at the pleading stage. In fact, motions to dismiss on these grounds have been denied in cases involving much less specific allegations from plaintiffs. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS(JCx), 2014 U.S. Dist. LEXIS 91976, at *12-13 (C.D. Cal. July 7, 2014) ("Similarly, defendant argues that the FAC does not adequately allege that defendant acted knowingly and/or willfully in violating the TCPA. This argument fails because the FAC alleges that defendant's conduct constituted 'multiple knowing and/or willful violations of the TCPA,' *see* FAC ¶ 58, and the Court takes this allegation as true for the purposes of the present motion."). And the same outcome is warranted here.

### III. There is No Basis to Strike Plaintiff's Class Allegations

Motions to strike are generally "disfavored." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). And though Federal Rule of Civil Procedure 23 permits courts to "deny class certification even before the plaintiff files a motion requesting certification," *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011), class allegations should only be stricken at this early stage when they "are facially defective and definitively establish that a class action cannot be maintained." *Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014). Of course, with respect to the TCPA, this question should be considered in the context of the Seventh Circuit's directive that "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Here, the Plaintiff seeks to represent a class of individuals like him, those who received pre-recorded calls for the Defendant despite not being a customer of theirs:

> All persons within the United States: (1) to whose cellular telephone numbers (2) Defendant, or a third party on their behalf, placed a call using artificial or pre-

7

    record messages (3) within the four years prior to the filing of the Complaint to trial, but (4) who were not customers of the Defendant.

ECF No. 1 at ¶ 30.

  The Defendant's first substantive argument[1] is that the Plaintiff is not typical because he was a wrong or reassigned number. However, that's exactly the type of class the Plaintiff is seeking to certify: individuals who got pre-recorded calls from the Defendant despite not having a relationship with them. Indeed, certification of TCPA classes like this one is far from an outlier. *See, e.g.*, *Samson v. United Healthcare Servs. Inc.*, No. 2:19-cv-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (certifying a "wrong number" TCPA class over objection); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022); *Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, No. CV 13-1170 DMG (EX), 2021 WL 5755044 (C.D. Cal. Dec. 1, 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying two "non-debtor" TCPA classes over objection).

---

[1] The Defendant also believes that the injunctive relief portion of the class should be stricken, but that fails for the same reason as above.

The Seventh Circuit has addressed this type of TCPA case in *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637 (7th Cir. 2012), *reh'g denied* 2012 U.S. App. LEXIS 10897, (May 25, 2012). In *Soppet*, the Seventh Circuit described these TCPA "wrong party" claims as follows:

> Customer incurs a debt and does not pay. Creditor hires Bill Collector to dun Customer for the money. Bill Collector puts a machine on the job and repeatedly calls Cell Number, at which Customer had agreed to receive phone calls by giving his number to Creditor. . . . The machine, [**8] called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master. Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail.

*Id.* at 638-39. Here, the Plaintiff is in the same shoes, he has no affiliation with this company who contacted him and discovery is likely to reveal many other individuals who are similarly situated. The Defendant relies extensively on *Buonomo v. Optimum Outcomes, Inc.,* 301 F.R.D. 292, 299 (N.D. Ill. 2014), but even there the Court *denied* the exact motion the Defendant has filed here, "[t]he Court makes no determinations regarding whether proposed class members' claims are, in fact, susceptible to generalized proof; it holds only that Buonomo must have the opportunity to conduct discovery regarding what evidence that exists before the Court can determine whether certification of a 'wrong party' class is appropriate in this case." This Court should hold the same as Plaintiff's claims arise from the same course of conduct and legal theory as those of the proposed class: Defendant's use of prerecorded messages to call cellular telephone numbers without consent. Plaintiff's injury is the same type of injury suffered by class members—unwanted, intrusive robocalls. Defendant attempts to subdivide the class based on hypothetical distinctions such as patient status, consent, or message content. These are merits-

9

based issues that do not defeat typicality at the pleading stage. The core question—whether Defendant placed prerecorded calls without consent—applies uniformly across the class. Indeed, the other cases relied upon by the Defendant suffer from the same issue – they are various class certification denials based on a full evidentiary record.

Defendant's "Health Care Rule" argument fails for the same reason – the class here is explicitly tied (even prior to discovery) to individuals who were not customers of the Defendant. So, the level of consent analysis for both customers and non-customers that plagued *Murtoff v. My Eye Dr., LLC*, No. 1:21-CV-02607, 2024 WL 4278033, at *2 (N.D. Ill. Sept. 24, 2024) is not present. Again, another case decided after discovery.

Finally, the Defendant's argument regarding typicality suffers from the same premature argument, even with the Defendant's reliance on *Haight v. Bluestem Brands, Inc.*, No. 6:13-CV-1400-ORL-28KRS, 2015 WL 12830482, at *1 (M.D. Fla. May 14, 2015). Here, prior to any discovery, the Plaintiff surely cannot be believed to be in the same position as the Plaintiff who at class certification had "offered no evidence indicating that any other individual was called by [the defendant] in the same manner." *Id.* Discovery will identify other such members of the putative class. Plaintiff has no conflicts with class members as the Defendant recognizes the wrong-number nature of the claim. There is no basis to conclude, at this stage, that Plaintiff is anything other than an adequate representative.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and to Strike Class Allegations in its entirety, allow this action to proceed to discovery, and grant such other and further relief as the Court deems just and proper.

Dated: January 20, 2026

PLAINTIFF,
By his attorney

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com