IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAYESH GODAMBE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-12897 |
| v. | ) ) | Judge Hon. Robert W. Gettleman |
| WOMEN'S HEALTHFIRST, PLLC | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Defendant Women's Healthfirst, PLCC (Women's Healthfirst), in reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Strike Calls Allegations, and in further support of its motion, states as follows:

**I.    Plaintiff cannot pursue individual or class claims for injunctive relief under the circumstances pled in his Complaint.**

The critical facts alleged in the Complaint establish Plaintiff did not have a live claim for injunctive relief at the time he filed this lawsuit, which means he does not have standing to pursue claims for injunctive relief. Plaintiff received two, and only two, voicemails on August 28, 2023 and August 30, 2023, respectively. (Dkt. No 1 at ¶¶ 18, 23, 25.)  More than two years after the calls ceased, Plaintiff filed his Complaint on October 23, 2025. (Dkt. No. 1.)  This is the precise circumstance where courts find that a named plaintiff does not have standing to pursue injunctive relief in a TCPA claim. *See Taylor v. Kin Ins., Inc.,* No. 25-CV-00213, 2025 WL 1651524, at *2 (N.D. Ill. June 10, 2025) (dismissing named plaintiff's claim and striking class claims for injunctive relief under TCPA where plaintiff alleged she received only two calls within span of a single month without offering a basis to conclude plaintiff was likely to receive another pre-

1

recorded call from defendant in the future); *Martin v. Bottom Line Concepts LLC*, 723 F. Supp. 3d 270, 281-82 (S.D.N.Y. 2024) (dismissing claim for injunctive relief under TCPA where complaint alleged only one robocall made one month before plaintiff filed class action complaint); *Blair v. Assurance IQ LLC*, No. 23 Civ. 16 (KKE), 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023) (finding no standing to seek injunctive relief where plaintiff "only received calls over a period of seven days" months before filing suit); *Doyle v. Matrix Warranty Sols., Inc*., 679 F. Supp. 3d 42, 43–44 (D.N.J. 2023) (finding no standing to seek injunctive relief where plaintiff only received one robocall); *Miller v. Time Warner Cable Inc.*, No. 16 Civ. 329 (CAS) (ASX), 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (finding no standing to seek injunctive relief where plaintiff had not received an violative call in eight months before filing suit).

Plaintiff's opposition brief cites *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893 (N.D. Ill. 2017) and *Marshall v. Grubhub Inc.*, No. 19-CV-3718, 2021 WL 4401496 (N.D. Ill. Sept. 27, 2021) for the proposition that he can pursue claims for injunctive relief in this case. While relying on *Snyder*, Plaintiff ignores the key facts and holding of that case. There, the defendant argued the plaintiffs (Mansanarez and Snyder) did not have standing to pursue injunctive relief under their TCPA claim because the defendant ceased its robocalls to plaintiffs after the complaint was filed. *Snyder*, 258 F. Supp. 3d at 900. Thus, the defendant argued, the plaintiffs did not face a real and immediate threat of receiving robocalls in the future and therefore the claims for injunctive relief for moot. *Id*. at 900-01. The court, however, recognized the exception to mootness, where "the time frame for the alleged injury is by nature temporary, a named plaintiff can continue to pursue the interests of the class even after his own claim has been rendered moot." *Id*. at 901 (citations omitted). Importantly, the court further recognized that for this exception to apply, "the named plaintiff [must] have a live claim at the time that the complaint was filed." *Id*.

2

(citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975) and *Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir. 1989)).

> The court found the exception to apply to the plaintiffs in *Snyder* because:
>
> At the time that Mansanarez joined this lawsuit, she possessed a live claim for prospective injunctive relief. Snyder filed the first complaint in this suit in October 2014, a time during which Mansanarez was still receiving phone calls from [defendant] […] Mansanarez continued to receive phone calls even after she joined this suit as a named plaintiff and filed an amended complaint in April 2015. […] Further, Marc Trees, the director of dialer and workforce management at [defendant], says the company's records did not reflect plaintiffs' lack of consent to the phone calls until September 2016. […] Prior to that date, Mansanarez faced an immediate threat of injury and continued to receive phone calls from Ocwen even after she joined this lawsuit.

*Snyder*, 258 F. Supp. 3d at 901 (record citations omitted). In other words, at the time the plaintiffs filed or joined the lawsuit, they were still receiving alleged illegal calls and they faced a real and immediate threat of future calls—*i.e.*, they had a live claim for injunctive relief at the time the complaint was filed.

Here, contrary to the alleged circumstances in *Snyder*, Plaintiff did not face a real or immediate threat of future calls at the time he filed the Complaint, which was more two years after the last call he allegedly received. He did not have a live claim for injunctive relief required for the mootness exception to apply. *Snyder* does not save Plaintiff's claim for injunctive relief.

In *Marshall*, whether the plaintiff lacked standing to pursue injunctive relief because she did not have a live claim at the time she filed the complaint was not at issue. Instead, the facts alleged were as follows:

> Shortly after she began receiving the calls, [plaintiff] called the (877) number provided in the voicemail and requested that she be placed on the do-not-call list. […] [Defendant] returned [plaintiff's] call and informed her that the issue was resolved. […] Soon thereafter, however, the calls started up again. On April 23, 2019, Marshall returned one of [defendant's] calls by dialing the number listed on her caller ID, and after speaking to a representative named Henry, asked for a second time that she be placed on their do-not-call list. [...] Nevertheless, the calls

3

continued.

*Marshall*, No. 19-CV-3718, 2021 WL 4401496, at *1. The plaintiff filed the complaint on June 4, 2019. *Id*. There, of course, the complaint alleged a real and immediate threat of future calls by the defendant in violation of the TCPA. Here, they do not. The only inference to be drawn from Plaintiff's Complaint is that he faced no threat of future calls at the time of filing, and he still faces no threat. Plaintiff's individual and class claims for injunctive relief must therefore be dismissed. *See Bohn v. Boiron, Inc.*, No. 11 C 08704, 2013 WL 3975126, at *6 (N.D. Ill. Aug. 1, 2013)

## II. Plaintiff has not plausibly alleged willful or knowing violations the TCPA to support treble damages.

Plaintiff opposition brief hangs his willful or knowing violation claim on the alleged fact that he received two calls regarding a patient's healthcare appointment and, specifically, that the second call was received after the patient apparently missed the appointment. Plaintiff never alleges that he ever informed Women's Healthfirst that it called a wrong number, or requested Women's Healthfirst to stop calling. Instead, over two years later, long after the second and final call, Plaintiff filed this lawsuit. These alleged facts offer no distinction between a plain violation of the TCPA and willful or knowing violation of the TCPA. *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 755 (W.D. Tex. 2011) (a plaintiff must demonstrate that the defendant was "more than negligent in its TCPA violation" to support willful or knowing conduct). Further, Plaintiff's cited authority provides limited guidance to show that his alleged facts (two automated health care messages) are sufficient under Rule 12(b)(6) to plausibly state a claim for willful or knowing violation of the TCPA.

As discussed in *Pacleb v. Cops Monitoring*, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief" and "[d]etermining whether a

4

complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." No. 2:14-CV-01366-CAS, 2014 WL 3101426, at *1 (C.D. Cal. July 7, 2014) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009); *Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir.2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)).

In *Pacleb*, the court provided scant discussion of the factual allegations other than, over twenty paragraphs of the complaint, the plaintiff alleged he received "numerous" or "multiple" automated calls from the defendant, one of which was an attempt to sell home security to plaintiff. *Pacleb*, No. 2:14-CV-01366-CAS, 2014 WL 3101426, at **1-2. The court found these allegations sufficient to allege multiple knowing and/or willful violations of the TCPA. *Id*. at *4. Here, again, only two calls were received by Plaintiff, and there are no facts alleged to show the calls were attempting to sell anything to Plaintiff. This is not enough. *See Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 9131, 2015 WL 13658554, at *5 (N.D. Ill. Jan. 23, 2015) (finding amended complaint alleging plaintiff was called *not as a wrong number* but as part of marketing effort was sufficient to allege calls were made willfully or knowingly). Plaintiff's suggestion that the second call, after the intended patient missed her appointment, could be a willful or knowing violation should be rejected by a court applying common sense to the circumstances alleged.

**III. Plaintiff's wrong number claim is not typical of the proposed class, which is overbroad because it includes anyone who is not currently a patient (but may have been) and received any type of automated message from Women's Healthfirst.**

First, the specificity of the message Plaintiff allegedly received shows Plaintiff is nothing more than a class of one. Yet, Plaintiff claims he is seeking to certify a class of "individuals who got pre-recorded calls from the Defendant despite not having a relationship with them." (Opposition at 8.) Again, this proposed class includes anyone without an existing relationship

with Women's Healthfirst who received any type of automated message from Women's Healthfirst, regardless of whether the putative class member's call was at all similar to the call Plaintiff received (a health care message regarding patient appointment) or whether the putative class member had a previous relationship with Women's Healthfirst (where they may have given consent for a call). A prior relationship and type of call matters—whether it was a marketing call, debt collection call, or a call regarding a patient appointment, all have different potential issues and defenses.

Second, Plaintiff cites a string of cases that certified or upheld certification of a "wrong number" class. (Opposition at 8.) None of those cases involved the unique health care circumstances of this case. One case Plaintiff's cites, *Williams v. PillPack LLC*, explains why *Buonomo v. Optimum Outcomes, Inc.*, which found the proposed class overbroad, should apply to this case:

> In *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014), for example, the court found the plaintiff was atypical of the proposed class because the class contained both debtors who may or may not have consented to receive calls from debt collectors and "wrong parties" who received calls because a prior owner had consented to receive such calls. 301 F.R.D. at 297. Since the plaintiff asserted he was the "wrong party" being called, which raised a distinct defense under the TCPA, their defense was not typical of the class at large. *Id*

*Williams v. PillPack LLC*, 343 F.R.D. 201, 213 (W.D. Wash. 2022). Here, as in *Buonomo*, Plaintiff's proposed class encompasses persons (prior patients) who may or may not have consented to receive calls, and wrong parties, like Plaintiff, who received calls because a prior owner of the number had consented to receive calls. Plaintiff's proposed class is simply too broad and Plaintiff's issues are atypical of certain proposed class members, and individual issues will predominate.

As set forth in Women's Healthfirst's motion and the discussion herein, the Court should

6

dismiss Plaintiff's claims for injunctive relief and Plaintiff's claims for treble damages based on alleged willful or knowing violations of the TCPA, and strike Plaintiff's class allegations.

Dated: February 20, 2026

Respectfully submitted,

/s/ *Daniel J. Cozzi*
Aiju C. Thevatheril
Daniel J. Cozzi
Benjamin D. Lothson
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash Ave., Suite 3300
Chicago, Illinois 60611
Tel. (312) 321-9100
Fax. (312) 321-0990
athevatheril@smbtrials.com
dcozzi@smbtrials.com
blothson@smbtrials.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 20, 2026, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.

/s/ *Daniel J. Cozzi*